Frederick JOSLYN, Jr.

v.

Henry S. KINCH, et al.

No. 83–0824–B.

United States District Court,
D. Rhode Island.

July 25, 1985.

William Y. Chaika, Pasco F. Loffredo, Chaika and Loffredo, Cranston, R.I., for plaintiff.

Steven E. Snow, Tillinghast, Collins & Graham, Providence, R.I., for defendant.

FRANCIS J. BOYLE, Chief Judge.

## OPINION

In this action Frederick Joslyn, Jr. sues Henry S. Kinch, both individually and in his capacity as Mayor of the City of Pawtucket; Albert R. Papineau, in his capacity as Treasurer and Finance Director of the City of Pawtucket; and the City of Pawtucket under the Civil Rights Act, 42 U.S.C. § 1983, alleging that the Defendants violated his constitutional rights to freedom of speech and association, as well as procedural and substantive due process, in attempting to terminate his employment as Director of Accounts for the City of Pawtucket. Plaintiff seeks money damages and injunctive relief.

Mr. Joslyn received a Bachelor of Arts degree in Economics from Rutgers University in 1973. He was employed by the City of Pawtucket on December 6, 1973. In January of 1977 he became Director of Accounts in the Finance Department of the City. In July of the same year he satisfactorily completed his probationary period in the position, and was accorded full status.

The job of Director of Accounts is a full-time position in the classified service of the City. In the Plaintiff's capacity as Director of Accounts he supervises nine employees, who have responsibility for the financial information of the City. The work of the Director of Accounts includes the administration and direction of the accounting program, including budgetary and general accounting; the direction of major accounting activities; the development and maintenance of manuals of accounts; and the preparation and submission of financial reports. The Director of Finance is charged with the maintenance of all city accounting records, and thus supervises the Director of Accounts.

In 1977 Mr. Joslyn received a Juris Doctor degree from the New England School of Law and was admitted to practice as a member of the Bar of the Supreme Court of the State of Rhode Island in 1979. Although he continued in his position as Director of Accounts, after 1979 the City took advantage of Mr. Joslyn's newly acquired talents. Following its election to become self-insured under the Rhode Island Workers' Compensation Law, the City was represented by Plaintiff before the Workers' Compensation Commission. The Plaintiff also conducted labor negotiations for the City, represented the City in grievance hearings and appeared before the Rhode Island Department of Employment Security with respect to employee claims.

On December 15, 1983 Mr. Joslyn was notified in writing by the Finance Director, Defendant Albert R. Papineau, that the position of Director of Accounts would be eliminated as of January 1, 1984. The body of the letter read as follows:

Due to reorganization in the Finance Department and the necessity to implement cost saving measures, the position of Director of Accounts will be dropped as of January 1, 1984.

This personnel change is one of several being implemented and [sic] the administration's continuing effort to streamline city government and cut costs.

We would like to thank you for your services to the City of Pawtucket.

Plaintiff then filed an application for a temporary restraining order on December 22, 1983 asking this Court to enjoin Defendants from terminating Plaintiff as Director of Accounts. On the following day,

Defendants agreed to the entry of a consent order reinstating Plaintiff as Director of Accounts until the Court held a full hearing, and temporarily rescinding the notice of December 15, 1983. Thus Plaintiff has been continuously employed as the Director of Accounts for the City.

On February 3, 1984 the City followed up its letter of December 15, 1983 with correspondence from Defendant Papineau which reiterated the fact that the position of Director of Accounts was being abolished because of a reorganization of the Finance Department and the necessity of implementing cost-saving measures. The letter acknowledged the fact that the effective date of the abolition had been delayed pending action by the Court, but expressed the City's intention to effect the position change as soon as it was permitted. The final paragraph read as follows:

> Due to the abolition of the position of Director of Accounts, you shall be laid off as a classified City employee to take effect on the same date that the position of Director of Accounts is abolished. Your name shall be placed on the eligibility list for re-employment if and when a position meeting your skills, training and experience becomes available. Moreover, I hereby certify that this lay off is not for reasons reflecting discredit upon your services as an employee.

It is Plaintiff's contention that his termination was in retaliation for the exercise of the rights guaranteed to him by the First Amendment to the United States Constitution. He claims he was discharged because of his practice of furnishing information and supporting opinions to a member of the City Council, Mr. Sarault, who was described as a thorn in the side of the Administration. The essence of Plaintiff's argument is that the information which he furnished to Councilman Sarault was used by the Councilman to embarrass the Administration, to the Administration's chagrin. The matters involved included the proposed sale of a school building, the leasing of office space by the City, the adjustment of a tax levy ceiling, the issuance of tax abatements by the City, the elimination of vacant positions from the City pay plan, and the accounting method used by the City in determining tax revenues received after the end of the fiscal year but applied as revenue within the fiscal year to reduce or eliminate deficit spending.

In support of his contentions, the Plaintiff points to several facts. First, he highlights the fact that it was almost two months after his intended termination before the City personnel ordinance was complied with which required the certification that Plaintiff's termination was not for reasons reflecting the quality of his work. Plaintiff also testified that in the fall of 1983 the Mayor of the City of Pawtucket, in a conversation with Councilman Sarault, referred to "your friend Joslyn" and Mr. Church, who was the Personnel Director of the City, advised the Plaintiff that "Brian Sarault had gone too far". Moreover, the Plaintiff believes that his contentions are supported by the fact that a directive was issued by the Mayor on December 2, 1983 to all City employees that communications between members of the City Council and the Administration were to take place only between the heads of departments and the Council members involved, with a notice of the communication to be forwarded to the Mayor. Other evidence cited by the Plaintiff includes the following: that after Plaintiff's termination, an employee of the Accounting Department who was the wife of the Mayor's Administrative Assistant became Chief Accounting Clerk; that on the day of his termination the City moved with remarkable speed to demolish partitions separating his office from other employees of the Department; and that after his termination, the Finance Director advised him that he was a "victim of politics."

The Plaintiff further claims that the abolition of his position as Director of Accounts was made in bad faith, to get rid of him as a person rather than his position. He argues that his position was created by a 1955 city ordinance which established a pay plan for the City of Pawtucket. As a result, Plaintiff avers that his position can

be lawfully abolished only by the authority which created it—that is, by the Pawtucket City Council. Plaintiff also contends that his due process rights were violated because the procedures specified in the City of Pawtucket's Personnel Rules and Regulations for terminating an employee were not followed.

The Defendants deny Plaintiff's allegations and propose quite a different scenario. They describe the Plaintiff as a "lawyer in sheep's clothing," suggesting that he abandoned any accounting duties in the Department of Finance other than those of a supervisory nature and took on legal duties for the City, as well as conducted his own private practice of law. Although this practice had been tolerated by a previous Finance Director, Mr. Papineau was not prepared to accept this behavior.

These contentions were documented by Defendant Papineau's testimony. According to Mr. Papineau, the Plaintiff delegated many of his duties as Director of Accounts to his subordinates; left the majority of the City's budget preparation to Defendant Papineau, rather than actively assisting him; and, when the Plaintiff did produce reports for him, set them out in a format which could not be utilized, so that Papineau had to redo them. Moreover, Mr. Papineau testified that the limited duty which the Plaintiff performed regularly, supervision of his department, was not performed during Plaintiff's frequent out-of-office trips. Both Defendant Papineau and Plaintiff agreed that the Plaintiff spent a large portion of his regular working hours out of his office on legal matters, with some of this time being devoted to Plaintiff's private law practice.

Mr. Papineau contends that the Mayor ultimately adopted his suggestion that the position of Director of Accounts be eliminated because it was unnecessary. Mr. Papineau testified he was instructed by the Mayor to notify Mr. Joslyn in accordance with the December 15, 1983 letter, a letter which actually was drafted in the Mayor's office. Defendant Papineau argues that the Plaintiff overstates the degree of embarrassment which the Plaintiff caused the Mayor. Mr. Papineau contends that, for the most part, no one was aware of the extent of the communications between Mr. Joslyn and Councilman Sarault, and that in any event the information was public information which was neither controversial nor scandalous.

According to Raymond Church, Personnel Director for the City, the elimination of Plaintiff's position was part of an ongoing reorganization of City government. Mr. Church testified that thirty positions were abolished between 1982 and 1985. He stated that this was accomplished by eliminating the Department of Community Affairs, reducing the staff on each garbage truck from three to two persons, closing the City incinerator, reducing the staff in the police and fire departments, abolishing parking meter attendants, reducing the number of supervisors and part-time employees in the Parks and Recreation Department, initiating an early retirement program, and failing to fill nonessential jobs which were vacated by general attrition. Mr. Church further testified that the Plaintiff was not the only person affected by the mid-December 1983 reorganization. At about this same time the positions of Director of Housing Standards, and Director and Assistant Director of the Redevelopment Authority were eliminated; the position of Chief Housing Inspector was created; the Redevelopment and Planning Departments were merged under the Planning Director; and an accountant was transferred from the Accounting Department to the Water Department.

Without becoming immersed in all of the details, it was abundantly clear that throughout 1983, prior to December 2, Councilman Sarault utilized information furnished by Plaintiff to raise a number of issues concerning the Administration's activities which were reported in the press. Plaintiff's unrefuted testimony was that he did not furnish any further information after the memorandum of the Mayor dated December 2, 1983 directing that communications with city departments by members

of the City Council be through the department head.

It was equally apparent that Plaintiff did not devote his entire 35–40 hour work week to the duties of Director of Accounts; rather, he spent a good portion of it upon legal matters. Furthermore, from the testimony it was obvious that Mr. Joslyn's job was not the only job in the City government to be eliminated during Mayor Kinch's Administration.

The issues the Court now must address are (1) was Plaintiff's employment terminated in retaliation for the exercise of his First Amendment rights; and (2) was Plaintiff accorded due process.

### FIRST AMENDMENT ISSUES

*Freedom of Speech*

■■■ In order to prove that a plaintiff's employment was terminated in retaliation for exercising his right to free speech, the plaintiff must show that his conduct was constitutionally protected. *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Then the plaintiff must show that this conduct was a "substantial factor" or "motivating factor" in the defendant's decision to terminate his employment. *Id.* Even if the plaintiff succeeds in proving these two elements of his case, he may not recover if the defendant demonstrates by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. *Id.* Thus a plaintiff may recover for a First Amendment violation only if the court determines that the defendant would not have terminated plaintiff's employment "but for" the plaintiff's exercise of his First Amendment rights. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 417, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979).

■■■ The Court first will address the question of whether Plaintiff's speech is protected. The First Amendment protects the right of every citizen to express his views without government regulation. *See, e.g., Givhan, supra* at 415, 99 S.Ct. at 696; *Smith v. Harris,* 560 F.Supp. 677, 692 (D.R.I.1983). However, when the citizen is a public employee, the interests of the employee as a citizen in commenting upon matters of public concern must be balanced against the interest of the government as an employer in promoting the efficiency of the public services it performs through its employees. *See Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

■ Although the Supreme Court has cautioned against developing a general standard for determining whether speech is protected, it has set forth some factors which should be considered in making this determination. *Id.* at 569, 88 S.Ct. at 1735. The Court has stated that, usually, critical comments on matters of public concern which are substantially correct are protected by the First Amendment and may not furnish grounds for an employee's dismissal. *Id.* at 570, 88 S.Ct. at 1735. An evaluation of the following factors may, however, dictate a different result:

> (1) whether it [the speech] was directed against those with whom plaintiff is regularly in contact such that it might impede harmony among coworkers or the ability of supervisors to maintain discipline; (2) whether plaintiff's activity has a detrimental impact on those with whom he must maintain personal loyalty and confidence for the fulfillment of his job responsibilities; and (3) with regard to erroneous statements concerning matters of public concern, whether such statement impedes plaintiff's performance of his daily duties or the regular operation of the [business] generally.

*McDonough v. Trustees of the University System of New Hampshire,* 704 F.2d 780, 784 (1st Cir.1983) (citing *Pickering v. Board of Education, supra,* 391 U.S. at 569–73, 88 S.Ct. at 1735–37). If private, rather than public, expression is involved, a fourth relevant consideration is the manner, time and place of the speech. *Connick v. Myers,* 461 U.S. 138, 152–53, 103 S.Ct. 1684, 1692–93, 75 L.Ed.2d 708 (1983);

*Givhan, supra,* 439 U.S. at 415 n. 4, 99 S.Ct. at 696 n. 4.

■ Whether an employee's speech deals with a matter of public concern is determined by the content, form and context of the statement. *Connick v. Myers, supra,* 461 U.S. at 147–48, 103 S.Ct. at 1690–91. Here the speech involved, that is, the information provided by Plaintiff to Councilman Sarault, concerned subjects of public interest. As already noted, these matters ranged from the proposed sale of a school building to the accounting method used by the City in determining tax revenues. Neither party to this suit contends that the information supplied by the Plaintiff was incorrect. The Court finds that the information was accurate in all material respects so as to be protected.

■ The information was not made public by the Plaintiff himself, even though the essence of Plaintiff's expression was made public by Councilman Sarault. Thus the speech involved can be argued to be public, because it was communicated to the public by a third person; private, because the information originally was conveyed in private; or both. Neither party to the suit addresses this issue. Regardless of the resolution of the public-private issue, the outcome is the same. After examining the four considerations influencing whether speech is protected, it is clear the expression here is protected.

Examining the first consideration, the speech here was not directed against those with whom Plaintiff was regularly in contact, that is Plaintiff's co-workers or his immediate superior, Defendant Papineau. Moreover, any criticism of Mayor Kinch's Administration which might have been implicit in the information supplied by Plaintiff to Councilman Sarault was indirect at best, since Plaintiff merely gave the Councilman documentation which the Councilman used to support the Councilman's own criticisms of the Administration.

As for the second consideration, the First Circuit has held that in order to show Plaintiff's expression had a negative impact on those with whom he must maintain personal loyalty and confidence to perform his job, Defendants initially must demonstrate that Plaintiff needed to preserve a relationship of personal trust and loyalty with his employer or supervisor to properly perform his job responsibilities. *Brasslett v. Cota,* 761 F.2d 827, 845 (1st Cir.1985). Here no such showing was, or could have been, made. Plaintiff was insulated from regular contact or the development of a confidential relationship with the Mayor, who arguably was impacted by his indirect criticism, because the chain of command contained one link, Finance Director Papineau, between Plaintiff and the Mayor.

Since the speech involved here has been determined to be accurate, the third consideration, whether the Plaintiff's statements impeded the performance of his daily duties or the regular conduct of the City's business, need not detain the Court. It apparently did not.

If it is assumed that the expression in this case was private, the fourth consideration as to the propriety of the manner, time and place of the speech's conveyance must be examined. Plaintiff, a public employee, distributed information on matters of public interest to an elected official. This information was not supplied in violation of any established procedure. *See Connick v. Myers, supra,* 461 U.S. at 153, 103 S.Ct. at 1693. Instead, the dissemination halted after the December 2 mayoral memorandum. The information often was conveyed during Plaintiff's working hours, but its conveyance arguably was within Plaintiff's job responsibilities. *Cf. id.* Finally, the information was not given out in the context of a personal dispute between Plaintiff and the City Administration, *see id.,* nor did Plaintiff personally confront his superior. *See Givhan, supra,* 439 U.S. at 415 n. 4, 99 S.Ct. at 696 n. 4. Thus the speech was conveyed in such a fashion as to be protected.

■ To summarize, the information conveyed by Plaintiff concerned areas with which the Plaintiff was more familiar than most by virtue of his training as an ac-

countant and his employ by the financial branch of the City government. To paraphrase the Supreme Court, it is essential that the public employees who are most likely to have informed and definite opinions on matters of public concern are able to speak freely on these issues without fear of retaliatory dismissal. *Pickering v. Board of Education, supra,* 391 U.S. at 572, 88 S.Ct. at 1736; *accord Pilkington v. Bevilacqua,* 439 F.Supp. 465, 474 (D.R.I. 1977), *aff'd,* 590 F.2d 386 (1st Cir.1979). The use to which Councilman Sarault put Plaintiff's information may well have caused the City Administration some discomfort. But,

> an employee's First Amendment rights to comment on and criticize his employer's actions shall not yield to an employer's interests in averting embarrassment. Were it otherwise, of course, an employee would have no right at all to engage in public criticism. That is a notion that the Supreme Court long ago flatly rejected.

*Brasslett v. Cota, supra* at 846.

■ Because Plaintiff has shown that his communications were protected, the Court must determine whether Plaintiff successfully has demonstrated that his conduct was a substantial or motivating factor in Defendants' decision to terminate Plaintiff's employment. He has not. From the evidence presented at trial the Court finds that, although Defendants may not have been overjoyed by the fact that Plaintiff furnished Councilman Sarault with information which documented the Councilman's criticisms of the Administration, the primary reason for dismissing the Plaintiff was because of the elimination of his position as part of an ongoing reorganization within the Pawtucket City government.

The position of Director of Accounts, as filled by the Plaintiff, was ripe for reorganization. Plaintiff neither spent a full work week engaged in the City's business, nor did those accounting duties which the Plaintiff performed occupy the whole of his City work schedule. Instead, the Plaintiff spent City time on his own private law practice, and rather than performing all the functions set out in the job description of Director of Accounts, Plaintiff acted as an attorney and labor negotiator for the City. Because of Plaintiff's only part-time devotion to his accounting duties, his subordinates and supervisor, Defendant Papineau, took over a large portion of his responsibilities. It then became obvious that the position of Director of Accounts was unnecessary, and that its abolition would streamline the City government, as well as benefit it financially.

■ A public employer is not prohibited from reorganizing its operations so as to eliminate unnecessary positions. *See Landry v. Farmer,* 564 F.Supp. 598, 606 (D.R. I.1983). The City of Pawtucket exercised its option in abolishing Plaintiff's position not because of his First Amendment activities, but because his position was unnecessary.

Assuming, *arguendo,* that Plaintiff's protected communications were a motivating factor in abolishing his position, Defendants have shown that they would have eliminated the position even if Plaintiff had not engaged in the protected conduct. The Administration had been actively reorganizing the City's government, eliminating positions which it deemed extraneous. *Cf. Pilkington v. Bevilacqua, supra* at 477 (discharge decision did not occur at a time when a number of personnel decisions were made). A Director of Accounts with the duties delineated in its job description was no longer necessary because many of the tasks already were being performed elsewhere. Thus the position went the way of the parking meter attendants and incinerator personnel.

*Freedom of Association*

■ The same factual determination is required to show that a plaintiff's employment was terminated in retaliation for the exercise of his freedom of association as for the exercise of his freedom of speech. *Rosaly v. Ignacio,* 593 F.2d 145, 149 (1st Cir.1979); *Landry v. Farmer,* 564 F.Supp. 598, 604–05 (D.R.I.1983). Thus the plaintiff must show that his associational con-

duct was constitutionally protected and that this was a "substantial" or "motivating" factor in the defendant's decision to discharge him. *Rosaly v. Ignacio, supra* at 149; *see also Landry v. Farmer, supra* at 604. If the plaintiff successfully meets his burden, in order for a defendant to prevail it must show by a preponderance of the evidence that it would have reached the same decision regardless of the protected conduct. *Rosaly v. Ignacio, supra* at 149; *Landry v. Farmer, supra* at 604–05.

■ The First Amendment guarantees all citizens a right to associate freely with others, *Griswold v. Connecticut*, 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965), as well as to speak freely. Usually the issue of whether a public employee was terminated in retaliation for his associations arises in a political context, with the plaintiff-employee being discharged because of his lack of affiliation with the political party then in power. *See Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The Supreme Court has held that a dismissal because of political affiliation is proper only if the defendant can demonstrate that party affiliation is an appropriate requirement for the effective performance of the job, as is often the case in confidential or policymaking positions. *Branti v. Finkel, supra*, 445 U.S. at 518, 100 S.Ct. at 1294; *see also Elrod v. Burns, supra*, 427 U.S. at 367, 96 S.Ct. at 2686.

■ Organizations established for the social, legal and economic benefit of their members also are encompassed within the concept of freedom of association. *Griswold v. Connecticut, supra*, 381 U.S. at 483, 85 S.Ct. at 1681, and cases cited there-

in. Here the Plaintiff claims he was discharged for associating with Councilman Sarault, a political adversary of the City Administration. Although this political and social alliance does not bear the imprimatur of a recognized organization, because of the broad interpretation given the associations within the First Amendment's purview, it is apparently protected.

■ Assuming that the association was a political alliance and thus constituted organized opposition to the City's Administration, an allegation implied in the complaint but not clearly shown at trial, Defendants did not demonstrate that the nature of Plaintiff's job was such as to exempt him from the First Amendment's protections. Defendants did not show that the job of Director of Accounts requires Plaintiff to be politically aligned with the Administration. Plaintiff, as Director of Accounts, is not in a confidential relationship with the Mayor, nor is he responsible for making policy or communicating the Administration's position and views to the public. *Accord Pilkington v. Bevilacqua*, 439 F.Supp. 465, 467 (D.R.I.1977), *aff'd*, 590 F.2d 386, 388 (1st Cir.1979). Rather, if any policy-making decisions or communications on behalf of the City are to made by Plaintiff, they are subject to the approval of his superior, the Finance Director.[1] The primary responsibility of the Director of Accounts, as set forth in its job description, is to maintain the City's accounting records under the direction of the Finance Director. According to the job description's specifications, any significant change in accounting procedures or practices has to be approved by the Finance Director, and procedure and policy problems are to be addressed through other high level departmental officials.[2]

---

1. Only while the Plaintiff was Acting Finance Director, a position which he held from May through December of 1982, was there a possibility his political associations were exempted from First Amendment coverage, and that time has long since passed.

2. Defendants curiously argue that the fact Plaintiff was performing legal work for the City makes his position that of a political appointee,

not subject to the First Amendment's associational protection. Defendants cannot rely on the fact that Plaintiff supplied legal services to the City to support its claim that Plaintiff's position as Director of Accounts is without First Amendment associational protections after maintaining that the reason Plaintiff's job was abolished was because he had time to, and did, provide legal expertise to the City.

■ Since the Court has found that Plaintiff's association with Councilman Sarault is protected by the First Amendment, the next step in the First Amendment analysis is to determine whether Plaintiff has shown that this association was a substantial factor in Defendants' decision to discharge him. Plaintiff clearly has not met his burden. As was noted in the context of Plaintiff's free speech claim, the position of Director of Accounts was eliminated because of reorganization within the City government, not in retaliation for the exercise of any of Plaintiff's First Amendment rights. Moreover, Defendants have demonstrated that they would have abolished Plaintiff's position even if he had not engaged in *any* protected conduct.

## DUE PROCESS ISSUES

■ The due process clause of the Constitution provides that a person cannot be deprived of life, liberty, or property without constitutionally adequate procedures. *Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). In order for the Court to consider whether an employee was discharged without due process of law, it must first find the employee has a property right in continued employment. *Id.,* 105 S.Ct. at 1491. Such a property interest is not created by the Constitution, but is established by existing rules or understandings stemming from an independent source such as state law. *Id.; Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Courts generally have recognized a property right if, "by statute, rule or contract, express or implied, the employee can only be fired for 'cause'." *Ventetuolo v. Burke,* 470 F.Supp. 887, 891 (D.R.I.1978), *aff'd,* 596 F.2d 476, 480-81 (1st Cir.1979). *See also Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Lynch v. Gontarz,* 120 R.I. 149, 157, 386 A.2d 184, 189 (1978). A unilateral expectation by the employee of continued employment, *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709, or a situation where an employee serves at the public employer's pleasure is not sufficient to give rise to a property interest. *Bishop v. Wood, supra,* 426 U.S. at 345-47, 96 S.Ct. at 2077-79; *Ventetuolo v. Burke,* 596 F.2d 476, 481 (1st Cir.1979).

■ Here Plaintiff Joslyn has the requisite property interest in his job as Director of Accounts to give rise to a right to due process. He is a classified employee who has completed his probationary period. The City Charter provides that any dismissal of an employee who has completed his probationary period of service from such a position in the personnel system "shall be for cause." Pawtucket, R.I. Charter art. VII, § 7–101. Since the general principle is that when public employees only can be dismissed for cause they have been given a property interest in their employment, it is clear Mr. Joslyn has a property interest in his position of Director of Accounts. *Accord Durkin v. Personnel Board,* 83 R.I. 353, 356, 116 A.2d 456, 457 (1955).

■ Once a property interest in continued employment has been found, an employee cannot be deprived of this employment without appropriate process. *Cleveland Board of Education v. Loudermill, supra,* 105 S.Ct. at 1493. This due process right takes two forms. It consists of a right to both procedural and substantive due process. The Court will first address the procedural due process issue.

### Procedural Due Process

The Supreme Court has repeatedly admonished that "due process is flexible and calls for such procedural protections as the particular situation demands," *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "[S]ome form of hearing is required before an individual is finally deprived of a property interest," and the hearing has to occur " 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

Here Plaintiff does not argue that the procedures provided him by the City of Pawtucket's Charter and its Personnel Rules and Regulations are inadequate, so as to violate the procedural guarantees of the Fourteenth Amendment to the Constitution. *Accord Casey v. DePetrillo*, 697 F.2d 22, 23 (1st Cir.1983); *cf. Cleveland Board of Education v. Loudermill, supra,* 105 S.Ct. at 1490 (plaintiffs alleged procedure provided by Ohio statute was unconstitutional on its face). If he did, his claims clearly would fall within both the purview of a § 1983 action, and the jurisdiction of this Court. Instead, Plaintiff contends that the Director of Accounts position was abolished by a branch of the City government which was not so empowered, and that the City terminated his employment without complying with the procedures set out in the City's Personnel Rules.

The issue of which branch of the City government is authorized to abolish the position of Director of Accounts, or any other position in the Pawtucket government, has not been addressed by any Rhode Island court in a published decision. The two cases of which the Court is aware involving the layoff of a Pawtucket city employee concern issues arising after the position was eliminated. *See LeFebvre v. Kando,* 119 R.I. 780, 383 A.2d 589 (1978) (use of efficiency rating in determining which employee is to be laid off); *Durkin v. Personnel Board, supra,* 83 R.I. at 359–60, 116 A.2d at 459 (petitioner's position abolished making it impossible for City to reinstate him pursuant to court order). This undecided issue is one more properly addressed by a Rhode Island state court.

Since the procedure provided by the City of Pawtucket's Personnel Rules and Regulations varies depending upon an employee's status as "dismissed" or "laid off", *see* Pawtucket, R.I., Personnel Rules & Regulations, Rule XIV, §§ 2, 5–6 (1977), only then will it be apparent if the City complied with the Rules' procedures. It is within the context and procedures of the City's Personnel Rules and Regulations

that this issue ought to be determined. This Court is not a super personnel board.

*Substantive Due Process*

Substantive due process protects a person from another's arbitrary and capricious actions in depriving him of his property. *Ventetuolo v. Burke,* 470 F.Supp. 887, 891 (D.R.I.1978). Plaintiff alleges in his complaint that he was deprived of substantive due process with respect to his job, without ever explaining this averment more fully.

Under these circumstances it is sufficient to say that Plaintiff's allegation is unfounded. The Court finds that neither the Defendants' actions in, nor their reasons for abolishing the position of Director of Accounts and laying off Plaintiff were arbitrary and capricious. *See Drown v. Portsmouth School District,* 451 F.2d 1106, 1108 (1st Cir.1971) (test for determining whether reasons are arbitrary and capricious).

Judgment shall be entered for the Defendants with costs. Defendants shall prepare a form of Order.

SO ORDERED.