Javier ANAYA SERBIA, et al, Plaintiffs,

v.

Miguel D. LAUSELL, et al, Defendants,

v.

Annie CEIDE, Third Party Defendant.

Civ. No. 85–1032(PG).

United States District Court, Puerto Rico.

Sept. 11, 1986.

José Ramón Pérez Hernández, San Juan, P.R., for plaintiffs.

Manuel Alvarado, Santurce, P.R., Carlos Dávila, San Juan, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

Plaintiffs brought their civil rights action under 42 U.S.C. § 1983 for injunctive relief and damages alleging that defendants de-prived them under color of state law of their right to freedom of association under the First and Fourteenth Amendments to the Constitution of the United States and of their right to due process under the Fifth and Fourteenth Amendments. Plaintiffs alleged that they were dismissed from their positions with the Puerto Rico Telephone Company (PRTC) because of their political affiliation. They also claim that their rights under the Personnel Act of Puerto Rico have been violated.

This matter is presently before the Court on the motions for summary judgment filed by defendants Lausell, Navarro, Molina and Ramos (hereinafter referred to as defendants) and by the PRTC. Defendants and co-defendant PRTC pray for the dismissal of the amended complaint based on the following grounds: that plaintiffs were terminated from their employment because they were illegaly hired; that no process was due because plaintiffs do not have a constitutionally protected property interest in their employment and that even if any rights were infringed, defendants are entitled to the defense of qualified immunity of public officials, and PRTC is immune under the doctrine of sovereign immunity. Plaintiffs filed their opposition to defendants' and PRTC's motion for summary judgment wherein they allege that they were dismissed because of their political affiliation and that as tenured employees of the PRTC they were not afforded their constitutional right to a pretermination hearing, as recognized in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c); *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In determining wheth-

er factual issues exist, the Court must view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Viewing the pleadings, sworn statements and annexed exhibits in that light, we find that there are genuine disputed issues of material fact as to some allegations but not as to the defense of sovereign and qualified immunity nor as to the standing to sue of the conjugal partnerships.

Plaintiffs are members of the New Progressive Party and were employed by the PRTC during the month of September 1983, with the exception of plaintiff Damián Negrón Vázquez, who was employed by PRTC from February 1975 to April 1977, by the Communications Authority of Puerto Rico from 1977 to 1982, and retired by PRTC on July 1983. On February 22, 1985, co-defendant Rafael A. Navarro sent each plaintiff a letter of termination effective on the same day. Shortly before their dismissals the Popular Party became the controlling party of the Commonwealth of Puerto Rico. Defendant Miguel D. Lausell, a member of the Popular Democratic Party, was President of PRTC and is sued in his personal and official capacity. Co-defendant Rafael A. Navarro occupied the position of Vice President-Employees Relations of the PRTC as of January 15, 1985; prior to that date he occupied different positions in the PRTC during the last sixteen years. He is sued in his personal and official capacity. Co-defendant Elsa Molina, a Popular Democratic Party member, is Acting Director for Personnel Administration of the PRTC since February 4, 1985, and is sued in her personal and official capacity. Co-defendant Armando Ramos is Acting Recruitment Manager of the PRTC since January 21, 1985, and is sued in his personal and official capacity. Defendant PRTC is a corporation organized under the laws of the State of Delaware.

### First Amendment

The principal issue before the Court is whether plaintiffs were dismissed because they exercised protected first amendment rights.

In order to prove that a plaintiff's employment was terminated in retaliation for the exercise of his freedom of association, the plaintiff must show that his associational conduct was constitutionally protected. *Rosaly v. Ignacio,* 593 F.2d 145, 149 (1st Cir.1979); *Joslyn v. Kinch,* 613 F.Supp. 1168 (D.R.I.1985); *Landry v. Farmer,* 564 F.Supp. 598, 604–605 (D.R.I. 1983). Then the plaintiff must show that this conduct was a "substantial factor" or "motivating factor" in the defendant's decision to terminate his employment. *Rosaly v. Ignacio, supra,* at 149; *Joslyn v. Kinch, supra,* at 1177; *see also, Landry v. Farmer, supra,* at 604. If the plaintiff successfully meets his burden, in order for a defendant to prevail it must show by a preponderance of the evidence that it would have reached the same decision regardless of the protected conduct. *Rosaly v. Ignacio, supra,* at 149; *Joslyn v. Kinch, supra,* at 1177; *Landry v. Farmer, supra,* at 604–605.

The First Amendment guarantees all citizens a right to associate fully with others. *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). Even the temporary irregular employees are constitutionally protected in their employment against the discrimination by reason of political ideas. *Báez Cancel v. Mayor Mun. of Guaynabo,* 100 P.R.R. 980 (1972); *Pierson Muller v. Feijoó,* 106 D.P.R. 838 (1978); *Juan Herman Colón v. CRUV,* 84 J.T.S. 52 (1984). "Political belief and association constitute the core of those activities protected by the First Amendment." *Elrod v. Burns,* 427 U.S. 347, 356, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976). Plaintiffs' associational conduct is constitutionally protected.

The next step in the First Amendment analysis is to determine whether plaintiffs have shown that their association was a substantial or motivating factor in defendants' decision to terminate their employment. The only indication of possible polit-

ical motivation shown by plaintiffs is that the controlling party had recently changed at the time of their discharge and plaintiffs' own references to party affiliation. Defendants denied that the Company knew and much less considered plaintiffs' political affiliation in the decision to discharge them from their employment (See Sworn Statement of co-defendant Navarro, Appendix Part 1 of defendants' motion for summary judgment). Defendants assert that plaintiffs were terminated because they were illegally hired.

An investigation conducted by co-defendant Navarro and other company officers in charge of implementing the Personnel Regulations allegedly revealed that many employees who were outside applicants, among them herein plaintiffs, were employed by the PRTC without considering first the internal employees and without complying with the publication requirements. Plaintiffs were notified through letter dated February 22, 1985, that the Company had determined that their recruitment was illegal because it was done in violation of the Personnel Regulations and of the Merit System.

In 1982, as a result of the decision of the Supreme Court of Puerto Rico in *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982), PRTC was forced to adopt regulations incorporating a merit system for its personnel similar to the one prevailing for government employees under the Puerto Rico Public Service Personnel Act of 1975, 3 I.P.R.A. § 1302, *et seq.* (Personnel Act). The Personnel Regulations were adopted and became effective on April 4, 1983. The Personnel Regulations establish a procedure for the recruitment and selection of regular managerial employees. Section 8.4 reads:

1. The PRTC shall as a norm, when filling the vacancies that arise, consider first the internal employees of the Company following the norms of publication and free competition for all the employees who comply with the requisites and provided that the internal candidates fill the vacancy. The opportunities are published through a Personnel Requisition which shall contain the following information: title of the position, minimum requirements, placement level in the salary structure, time limits to file applications, department and work area, and any other indispensable information such as the type of competition and testing.

2. Should there not exist proper internal candidates to cover the vacancy or vacancies or when the Company deems that it is convenient and practical, it shall proceed to external recruitment.

3. In order to attract and retain in the Company the more capable persons by means of external recruitment, the opportunities of employment shall be divulged through the most appropriate means of communication in each case.

The following shall be considered adequate means of communication: bulletin boards, publications, daily newspapers, professional magazines, private or public employment agencies and other means that may reach interested parties.

Although plaintiffs' allegations of political discrimination are conclusory, defendants' allegation concerning the absence of an improper motive, the illegal hiring, may just be a pretext to cover the political discrimination. The PRTC was not obliged by its Personnel Regulations to always cover a vacancy with an internal candidate. Rule 8.4(2) of the Personnel Regulations permits the PRTC when it deems it convenient and practical to cover a vacancy with an external candidate. The Regulations also provide that to attract external candidates the opportunities for employment shall be divulged through adequate means of communication such as publications, newspapers and other means that may reach interested parties.

■ The issue of whether the protected conduct was a substantial or motivating factor in the employment decision and of whether the same action would have been taken in the absence of the protected activity are issues of fact to be determined by the jury. *Roberts v. Van Buren Public*

*Schools,* 773 F.2d 949, 954 (8th Cir.1985); *Wheeler v. Mental Health & Mental Retardation Authority,* 752 F.2d 1063, 1069 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985). Courts have traditionally held that summary judgment is inappropriate when "questions of motive predominate in the inquiry about how big a role the protected behavior played in the employment decision." *Peacock v. Duval,* 694 F.2d 644 (9th Cir.1982), *quoting, Mabey v. Reagan,* 537 F.2d 1036, 1045 (9th Cir.1976). *See also, McGee v. Hester,* 724 F.2d 89 (8th Cir.1983).

Plaintiffs must be afforded a fair opportunity to show that defendants' stated reasons for plaintiffs' dismissal was in fact a pretext. *Holley v. Seminole County School Dist.,* 755 F.2d 1492, 1505 (11th Cir.1985), *quoting, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). And if it was not a pretext, PRTC may justifiably dismiss one who had been illegally hired, but only if this criterion is applied alike to members of all political parties. *McDonnell Douglas Corp. v. Green, supra; Holley v. Seminole County School Dist., supra.*

The record before us presents genuine issues of material fact as to whether plaintiffs were hired without following PRTC's Personnel Regulations and, thus, were illegally hired and for that reason they were discharged, or whether they were dismissed because they were members of the New Progressive Party.

### Due Process

The due process clause of the Constitution provides that a person cannot be deprived of life, liberty, or property without constitutionally adequate procedures. *Joslyn v. Kinch, supra, citing, Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). The inquiry to be made by the Court as to whether an employee was discharged without due process of law is as follows: it must first find whether the employee has a property interest in continued employment. *Id.,* 105 S.Ct. at 1491. Such a property interest is not created by the Constitution but is established by existing rules or understandings stemming from an independent source such as state law. *Id., Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Joslyn v. Kinch, supra.*

The issue of whether the plaintiffs had any legitimate expectancy of continued employment in the PRTC depends on whether their hiring was illegal for not complying with the PRTC's Personnel Regulations. Defendants sustain that an illegal appointment contrary to the PRTC Personnel Regulations and the Personnel Act of 1975 cannot achieve the rank of a proprietary interest protected by the federal due process clause.[1] They further allege that *Cleveland Board v. Loudermill* is inapplicable to the case of illegally recruited employees who enjoy no tenure rights.

In *Liliana Laboy v. ELA,* 84 JTS 23 (1984), the Puerto Rico Supreme Court held that the agency's failure to abide by its own personnel regulations in the appointment of outside candidates over available internal agency employees constituted *ultra vires* conduct. The Supreme Court has further held that acts contrary to the law are null, especially if such acts are contrary to the public order established by the Personnel Act. *Colón v. Alcalde Municipio Ceiba,* 112 D.P.R. 740 (1982).

■ Whether the PRTC acted *ultra vires* by failing to abide by its own personnel regulations in the appointment of plaintiffs, with the consequence that plaintiffs failed to acquire a property interest in their employment protected by the due process

---

1. The Supreme Court of Puerto Rico has stated that "it is not necessary to prefer charges against irregular employees to fire them from their employment.... The constitutional guarantee [against discrimination] does not prevent the Mayor from discharging an irregular employee for no cause at all...." *Baez Cancel v. Mayor Mun. of Guaynabo,* 100 P.R.R. 988 (1942).

clause, is an issue of material fact in controversy.

## Eleventh Amendment

Whether we are barred by the Eleventh Amendment of the U.S. Constitution from entertaining the suit by private parties against the PRTC depends upon whether the PRTC "is to be treated as an arm of the State."[2]

PRTC's allegations as to its immunity under the Eleventh Amendment are a copy of the opinion and order entered by Judge Gierbolini in another case in which PRTC was a defendant. In that case Judge Gierbolini held that PRTC and the Puerto Rico Telephone Authority (the Authority) are both arms of the Commonwealth based on the fact that the Authority is the owner of 100% of the stock of PRTC and that the Authority is part of the public corporation system of the Commonwealth of Puerto Rico.

The Court, however, did not weigh the relevant factors which must be weighed in order to determine whether to apply the doctrine of sovereign immunity to a governmental agency. In *Canadian Transport Co. v. Puerto Rico Ports Authority*, 333 F.Supp. 1295 (D.P.R.1971), the Court stated, at page 1297, that:

Even though one of the criteria is not controlling over all others, there are two of more importance than the others and have been more consistently applied. The first important factor is the determination of the source of the funds to pay a judgment favorable to plaintiff. Clearly if the funds must come from the Commonwealth treasury, the Commonwealth will have a more than passing interest in the litigation. In determining this fact, the Court studies how the Commonwealth has immunized itself from the obligation incurred by the agency. The other important factor is whether the agency has the power to sue and be

sued.... Clearly if the agency's organic act provides for authority to sue and be sued with no restrictions, a general waiver can be implied for suits in any court of competent jurisdiction.

*See also, Pla Aguirre v. Commonwealth of Puerto Rico*, 353 F.Supp. 1294 (D.P.R. 1972); *Ursulich v. Puerto Rico National Guard*, 384 F.Supp. 736 (D.P.R.1974); *Cancel v. San Juan Construction Co., Inc.*, 387 F.Supp. 916 (D.P.R.1974).

There are other secondary factors to consider, such as whether the agency is peforming a governmental or proprietory function, whether it has been separately incorporated, the degree of autonomy over its operations, and whether its property is immune from state taxation. *Ursulich v. Puerto Rico National Guard, supra.*

We will analyze the PRTC applying the above stated factors to determine how interrelated PRTC is to the Commonwealth. We will look at the nature of the entity created by state law and the extent of independent financing of the agency by the state. *Pérez v. Rodríguez Bou*, 575 F.2d 21 (1st Cir.1978).

PRTC has been described by the Puerto Rico Supreme Court as a public-private corporation for although it is incorporated as a private corporation under the laws of Delaware, the Authority, a public corporation under the laws of Puerto Rico, became the owner of all the stocks. *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982). However, the law provides that "nothing in this chapter [Puerto Rico Telephone Authority Act] shall be construed as to grant to the Puerto Rico Telephone Company or any company whose stock is acquired by the Authority, the status of a public corporation of the Commonwealth of Puerto Rico." 27 L.P.R.A. § 409.

The fact that the Authority, as owner of the PRTC, is a public corporation does not end the query as to whether PRTC is immune. "Normally a public corporation

---

**2.** Despite the lack of formal statehood, Puerto Rico enjoys the shelter of the Eleventh Amendment. *Ramírez v. Puerto Rico Fire Service*, 715 F.2d 694, 697 (1st Cir.1983); *Ezratty v. The Commonwealth of Puerto Rico*, 648 F.2d 770, 776 (1st Cir.1981); *Paul N. Howard v. Puerto Rico Aqueduct Sewer*, 744 F.2d 880 (1st Cir.1984).

must have some connection with and control from the general government. This factor alone cannot defeat the clear intention of the law to create a distinct and separate entity from the Commonwealth." *Canadian Transport Co. v. Puerto Rico Ports Authority, supra,* at 1298; *see, e.g., Paul N. Howard v. Puerto Rico Aqueduct Sewer,* 744 F.2d 880 (1st Cir.1984) (an autonomous governmental corporation, such as PRASA [Puerto Rico Aqueduct & Sewer Authority], which was established to provide drinking water and sewage facilities for the people of Puerto Rico, is not normally immune from suit in federal court).

Now we have to examine the laws that created the Authority to determine whether it is a public corporation with sufficient identity and distinction, vis a vis the Commonwealth Government, so as to be liable to be sued.

Fiscal autonomy is granted to the Authority. Section 407(u) of Vol. 27 of the Laws of Puerto Rico Annotated, provides that "the Authority shall have no power to pledge the credit of the Commonwealth of Puerto Rico, nor shall the Commonwealth of Puerto Rico or any of its political subdivisions other than the Authority be liable for the payment of the principal of or interest on any bonds issued by the Authority under the provisions of this chapter."

PRTC's operations generate revenues and nowhere do defendants dispute plaintiffs' allegation that the judgment rendered in this case would be paid out of PRTC's or the Authority's funds rather than those of the Commonwealth. *See, e.g., Paul N. Howard v. Puerto Rico Aqueduct Sewer, supra.*

This fiscal autonomy is confirmed by 27 L.P.R.A. § 411, which makes the Authority pay from its net revenues [3] of the preceding calendar year to the Secretary of the Treasury an amount equal to the taxes on any and all property of the Authority or of any subsidiary created under Section 409 hereof or of any company absolute estate of the Authority, that would have been due to the municipalities for current fiscal year.

Sections similar to the above quoted were sufficient to convince the court in *Canadian Transport Co. v. Puerto Rico Ports Authority, supra,* and in *Paul N. Howard v. Puerto Rico Aqueduct Sewer, supra,* that the governmental corporations sued were not alter egos of the state and therefore did not qualify for immunity under the Eleventh Amendment.

Although the income, accounts and disbursements of the Authority and the PRTC are subject to supervision by the Comptroller of Puerto Rico, 27 L.P.R.A. § 409, and although the Authority has to submit to the Legislature and to the Governor of Puerto Rico annual reports of the business, 27 L.P.R.A. § 424, under the Law of Puerto Rico, 27 L.P.R.A. § 407, the Authority has the power to:

(a) have perpetual existence as a corporation

\*    \*    \*    \*    \*    \*

(e) sue and be sued in its own name, plead and be impleaded [4]

\*    \*    \*    \*    \*    \*

(h) make and execute agreements, lease controls and other instruments ... with any person, firm, corporation, Federal

---

**3.** The term "net revenues" means revenues of the Authority and its subsidiaries and of any company whose common stocks, excluding qualifying shares, are owned by the Authority, collected in any year, which remain after provision has been made for (I) the expenses incurred by the Authority and its subsidiaries in operating, maintaining and improving communication facilities and providing reserves therefor; (II) the payment of the principal of and interest on the Authority's outstanding bonds, ... and (IV) the payment of the principal of and interest and dividends on any outstanding bonds, notes, debentures and preferred stocks

of any company owned by the Authority, and reserves therefor. 27 L.P.R.A. § 411(b).

**4.** Similar to the Ports Authority, in the *Canadian Transport* case the amenability to suit of the PRTC is such that in the case of any holder of the Authority's bonds they have the right to "apply in an appropriate judicial proceeding to any court of competent jurisdiction in Puerto Rico for the appointment of a receiver of the Communication Facilities or part thereof, ... 27 L.P.R.A. § 417(a).

Agency and with the Commonwealth of Puerto Rico and any of its political subdivisions, agencies or instrumentalities.

\* \* \* \* \* \*

(j) acquire any property or interest therein in any lawful manner. . . .

\* \* \* \* \* \*

(m) determine, fix, impose, change, alter and collect reasonable rates, fees and charges. . . .

\* \* \* \* \* \*

(o) borrow money for any of its corporate purposes and to issue bonds in evidence of such indebtedness and to secure the payment of such bonds and the interest thereon by pledge of, or other lien on all or any of its communication facilities and the revenues derived therefrom; and

(p) issue bonds for the purpose of funding, refunding, purchasing, or discharging any of its outstanding bonds.

A full examination of the law that deals with the Authority and the PRTC reveals that it satisfies the two most important criteria set out in the *Canadian Transport* and *Aguirre* cases, to wit: that said public corporation has been endowed with the power to sue or be sued and that if a judgment is rendered in favor of the plaintiffs, the funds to pay for it do not have to come from the Commonwealth's treasury. Therefore, because PRTC and the Authority are not to be treated as an arm of the Commonwealth, we are not barred by the Eleventh Amendment from entertaining this suit against them.[5]

### Qualified Immunity

Defendants allege that they are entitled to the qualified immunity defense of public officials.

Government officials are shielded from liability for civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *see also, Luisa A. de Abadía v. Hon. Luis Izquierdo Mora*, 792 F.2d 1187 (1st Cir. 1986); *Oscar J. Fernández v. Francis T. Leonard*, 784 F.2d 1209 (1st Cir.1986); *Tubbesing v. Arnold*, 742 F.2d 401 (8th Cir.1984).

The Court of Appeals for the First Circuit, in a concurring opinion, explains what public officials are required to establish in order to obtain summary judgment on the defense of qualified immunity.

As moving parties for summary judgment, defendants had the burden of showing the absence of a facial dispute over material issues relative to their defense of qualified immunity. Hence, the moving papers were required to substantiate the absence of a material issue of disputed fact over whether, at the time they demoted [discharged] plaintiff, defendants could reasonably have believed that the law was not clearly established against their actions. *Luisa A. de Abadía v. Izquierdo Mora, supra*, at p. 1188 (Campbell, L. concurring).

The standard to be used in determining whether defendants prevailed in their quality immunity defense is solely an objective one. The Supreme Court in *Davis* stated that:

Whether an official may prevail in his qualified immunity defense depends upon the "objective reasonableness of [his] conduct as measured by reference to clearly established law." No other 'circumstances' are relevant to the issue of

---

5. Even if we had reached the conclusion that the PRTC was an alter ego of the state, the outcome would have been the same for it had waived any protection it might have enjoyed under the Eleventh Amendment by not only answering the amended complaint but filing a third party complaint. A "state may waive its Eleventh Amendment immunity, *e.g., Pennhurst*

*State School & Hospital v. Halderman*, 465 U.S. 89, 94–96, 104 S.Ct. 900, 905, 75 L.Ed.2d 67 (1984), and it has long been established that a general appearance may constitute such a waiver, *e.g., Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883)." *Paul N. Howard v. Puerto Rico Aqueduct Sewer, supra,* at 1886.

qualified immunity. *Davis*, 104 S.Ct. at 3018–19 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738).

Defendants in their motion asserted that there is no genuine issue of material fact that at the time they discharged plaintiffs employees of the PRTC defendants could reasonably have believed that their recruitment of plaintiffs was done in violation of the PRTC Personnel Regulation and of the merit principle rendering plaintiffs' appointment illegal based on an investigation of the files and records of the PRTC, which allegedly revealed that the PRTC did not consider first the internal employees of the company and did not publish the positions occupied by the plaintiffs.

Plaintiffs' opposition consists of the bare allegation that defendants' "conduct was unreasonable even under the 'objective' standard." As a matter of law defendants could reasonably believe that plaintiffs were illegally appointed. However, on the merits plaintiffs may prove that the true motive behind plaintiffs' discharge was plaintiffs' political affiliation.

Plaintiffs further aver that the constitutional and statutory rights of plaintiffs were clearly established at the time of defendants' illegal action against plaintiffs. A plaintiff who "seeks damages for violation of constitutional or statutory rights may overcome [an] official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Tubbesing*, 742 F.2d at 407 (quoting *Davis*, 104 S.Ct. at 3020–21).

We had previously concluded that there was a genuine issue of material fact as to whether plaintiffs were illegally hired and therefore had no property interest in continued employment with the PRTC.

■ Since it is not clearly established that plaintiffs had a property interest in the employment with the PRTC, the defendants cannot be held to have violated a clearly established property right of which

a reasonable person would have known. *See, e.g., Tubbesing v. Arnold, supra.* Because the "clearly established" test has not been met the defendants met the requirements of qualified immunity and are therefore entitled to summary judgment on plaintiffs' claims for money damages.

### *Standing to Sue of the Conjugal Partnerships*

Defendants move for the dismissal of the spouses [6] or conjugal partnership of those plaintiffs who were employed and dismissed by the PRTC based on lack of standing to sue under 42 U.S.C. § 1983.

■ In order to state a claim cognizable under Section 1983 a plaintiff must allege initially "that some person has deprived him of a federal right." *Gómez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Section 1983 imposes liability only for conduct which subjects, or causes to be subjected, the complainant to the deprivation of a right secured to him by the Constitution and laws of the United States. *Rizzo v. Goode*, 423 U.S. 362, 370–371, 96 S.Ct. 598, 603–604, 46 L.Ed.2d 561 (1976); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–1913, 68 L.Ed.2d 420 (1981). The law seems clear that one person may not sue, nor recover damages, for the deprivation of another person's civil rights. *O'Malley v. Brierley*, 477 F.2d 785, 789 (3rd Cir.1973). The conjugal partnerships formed by plaintiffs employees and their spouses have failed to show that any recognized legally valid right was violated by defendants' dismissal of the employees for allegedly political reasons. *See, e.g., Dohaish v. Tooley*, 670 F.2d 934 (10th Cir. 1982) (a father of a student did not suffer any violation of his civil rights because the discrimination alleged did not extend to him as father of the student); *Jenkins v. Carruth*, 583 F.Supp. 613 (E.D.Tenn.1982) (husband lacked standing to recover damages under Section 1983 for the deprivation by a third party of the civil rights of his

---

6. The individual spouses are not named as plaintiffs in the amended complaint. The complaint was amended to include the conjugal partnerships constituted by plaintiffs employees and their spouses.

wife). The respective conjugal partnerships lack standing under Article III of the United States Constitution to bring the present action and the complaint should be dismissed as to them.

For the reasons set forth, the Court ORDERS:

(1) that defendants' motion for summary judgment be and is hereby GRANTED in part;

(2) that plaintiffs' claim for money damages against defendants Lausell, Navarro, Molina and Ramos be and is hereby DISMISSED;

(3) that plaintiffs' conjugal partnerships be and are hereby DISMISSED from this action.

IT IS SO ORDERED.