Sandra K. STANEART, Plaintiff,

v.

BOARD OF TRUSTEES OF RANSOM MEMORIAL HOSPITAL, J. Dewey Smith, Betty Kimball, Don McKelvey, Alfred Mettenburg, Donald Sellers, and David Drumright, Defendants.

Civ. A. No. 86–2448.

United States District Court,
D. Kansas.

April 18, 1988.

Jerry K. Levy, Rene M. Netherton, Jerry K. Levy, P.A., Topeka, Kan., for plaintiff.

Thomas H. Bornholdt, Overland Park, Kan., for Board of Trustees of Ransom Memorial Hosp.

M. Dean Burkhead, Riling, Norwood, Burkhead & Fairchild, Lawrence, Kan., for Board of Trustees, Alfred Mettenburg and David Drumright.

R. Michael Latimer, Skoog & Latimer, Ottawa, Kan., for Don McKelvey.

Richard O. Skoog, Skoog & Latimer, Ottawa, Kan., for Betty Kimball and Donald Sellers.

Steven B. Doering, Cole & Doering, Garnett, Kan., for J. Dewey Smith.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on the motion to dismiss of defendants J. Dewey Smith (hereinafter "Smith"), Betty Kimball, Alfred Mettenburg, Donald Sellers, and David Drumright. Because the defendants' supporting memorandum and plaintiff Sandra K. Staneart's (hereinafter "Staneart") opposing memorandum refer to matters beyond the pleadings, the court will consider the motion as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b).

The pertinent facts are as follows: Staneart was employed as Director of Nursing at Ransom Memorial Hospital (hereinafter "hospital"), a county-owned hospital in Ottawa, Kansas. Smith was the administrator of the hospital, and the remainder of the above-mentioned defendants were members of the hospital's board of trustees. When Staneart began her employment in May 1980, she was given an employment manual outlining hospital policies. The manual included policies on dismissal which indicated that an employee could be dismissed only for cause. Staneart signed a statement at the end of the manual indicating that she had read and understood its contents.

During Staneart's employment, she received favorable performance evaluations. Nonetheless, friction apparently developed between Smith and Staneart. On March 24, 1986, Smith informed Staneart that she was terminated as of that day.

On March 25, 1986, the board met in closed session to discuss Staneart's termination. It reconvened in open session and voted against rescinding the dismissal. Staneart appealed the decision to Smith, in accordance with the procedures outlined in the employment manual. He decided against her. Staneart then appealed to the board, which asked her lawyer to submit a written brief. The board then proposed that a third party hear Staneart's appeal,

but the board refused to be bound by the third party's decision. As of August 1986, Staneart had been provided no hearing. She then informed the board that she was withdrawing her appeal, and she filed a complaint in this court.

The complaint alleges violations of Staneart's rights under 42 U.S.C. § 1983 and the fifth and fourteenth amendments. It names as defendants the board, individual board members, and Smith. The complaint and memoranda before the court assert that Staneart had a property interest in her employment because the parties' course of conduct, specifically the distribution and signing of the employment manual, gave rise to an implied employment contract allowing termination only for cause. With this motion, the defendants contend that they are entitled to qualified immunity for their actions with respect to Staneart's termination. Staneart responds that qualified immunity is inapplicable because clearly established law proscribed the defendants' conduct. As stated above, the court will consider this motion as a motion for summary judgment.

When considering a motion for summary judgment, we must examine all evidence in the light most favorable to the opposing party. *Prochaska v. Marcoux,* 632 F.2d 848, 850 (10th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981). If the moving party bears the burden of proof at trial, he must show, through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* Fed.R. Civ.P. 56(c). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986). This burden is met when the moving party identifies those portions of the record demonstrating an absence of a genuine issue of material fact. *Id.* 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

If the moving party meets his requirement, the burden shifts to the nonmoving party, who "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986) (emphasis added). The trial judge then determines whether a trial is needed—"whether, in other words, there are any genuine. factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* 477 U.S. at 250, 106 S.Ct. at 2511, 91 L.Ed.2d at 213.

The doctrine of qualified immunity was described in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), where the Supreme Court stated "that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* 457 U.S. at 818, 102 S.Ct. at 2738. Formerly, the qualified immunity test had both an objective aspect and a subjective aspect. *See, e.g., Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214, *reh. denied,* 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975). An official was entitled to qualified immunity unless he knew or reasonably should have known his actions violated a plaintiff's constitutional or statutory rights, or he acted with malicious intention to deprive a plaintiff of his rights. *Id. Harlow* eliminated the subjective aspect of the qualified immunity test so that more claims could be resolved on summary judgment motions. *See McSurely v. McClellan,* 697 F.2d 309, 316 (D.C.Cir.1982). Thus, the qualified immunity test became compatible with the Court's goal of dispensing with insubstantial claims prior to trial. *Harlow,* 457 U.S. at 816–18, 102 S.Ct. at 2737–38; *see also Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

The functional details of qualified immunity are as follows: Qualified immunity is an affirmative defense which must be

pleaded by the defendant. *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736. The burden then shifts to the plaintiff, who must convince the court that the law proscribing the defendant's conduct was clearly established at the time the defendant allegedly deprived the plaintiff of his constitutional or statutory rights. *Lutz v. Weld County School District No. 6,* 784 F.2d 340, 342–43 (10th Cir.1986). Whether the law was clearly established is a matter of law to be resolved by the court. *Id.* at 343. "[T]he court must focus on the specific nature of the conduct complained of and the state of the law with respect to the identified conduct at the time the official acted." *Myers v. Morris,* 810 F.2d 1437, 1459 n. 16 (8th Cir.1987); *see also Anderson v. Creighton,* — U.S. ——, ——, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523, 532 (1987).

■ If the plaintiff fails to convince the court that the law was clearly established, the defendant is entitled to qualified immunity and judgment must be entered in his favor. *Burk v. Unified School District No. 329,* 646 F.Supp. 1557 (D.Kan. 1986). However, if the plaintiff convinces the court that the law was clearly established, the court then determines whether the defendant has raised a factual issue as to whether there existed "exceptional circumstances" such that a reasonable person in the defendant's position would be unaware of the relevant legal standard. *Id.; see also Lutz* at 343. If the defendant has raised a factual issue as to exceptional circumstances, the fact-finder determines whether a reasonable person would be unaware of the legal standard. If so, the defendant is qualifiedly immune and the fact-finder does not reach the issue of whether the defendant's acts were a constitutional or statutory violation. If not, or if no factual issue as to exceptional circumstances is raised by the defendant, the fact-finder deliberates as to whether the defendant's acts violated the plaintiff's constitutional or statutory rights.

In the instant action, the defendants have pleaded the defense of qualified immunity. The burden thus shifts to Staneart, who must convince the court that

clearly established law prohibited the defendants' actions.

■ The law is clearly established that fourteenth amendment due process "requires 'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Due process does not require a full adversarial, evidentiary hearing prior to termination; rather, the employee should be given notice of the termination decision and an opportunity to respond. *Id.* 470 U.S. at 545–46, 105 S.Ct. at 1495. The pre-termination hearing satisfies due process standards if it is "an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* If the hearing is limited in this manner, however, post-termination procedures, in the form of a hearing or an appeals process, should determine the propriety of the discharge. *See id.* at 545, 548, 105 S.Ct. at 1495, 1496 (holding that due process was afforded where there was a pre-termination hearing allowing the employee to respond and a post-termination appeals process to determine the propriety of the termination).

■ However, an employee is entitled to fourteenth amendment due process only if he has a property interest in his employment. *See Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972); *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491. To determine whether Staneart had a property interest in continued employment, the court must look to the state law of Kansas. *Vinyard v. King,* 728 F.2d 428, 431–32 n. 10 (10th Cir.1984) (citing *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976)).

Traditionally, Kansas law has "held that, in the absence of an express or implied contract between an employee and his employer covering the duration of such employment, no action for discharging the em-

ployee from service can be maintained against the employer." *Morriss v. Coleman Co.,* 241 Kan. 501, 510, 738 P.2d 841 (1987) (citing *Swart v. Huston,* 154 Kan. 182, 117 P.2d 576 (1941)). The Kansas Supreme Court followed the traditional employment-at-will doctrine in *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779 (1976). In *Johnson,* the court held that an employment manual distributed during the plaintiff's tenure did not expressly or impliedly create an employment contract altering the traditional employment-at-will relationship, even where the manual stated that "[n]o employee shall be dismissed without just cause." *Id.* at 54, 551 P.2d at 782.

Since *Johnson,* however, the Kansas Court of Appeals has retreated somewhat from strict application of the employment-at-will doctrine. *See Morriss,* 241 Kan. at 511–13, 738 P.2d 841 (detailing the abandonment of the doctrine in certain instances by the court of appeals). For example, discharge of an employee in retaliation for filing a worker's compensation claim is actionable at law and may support an award of actual and punitive damages. *See Murphy v. City of Topeka,* 6 Kan.App.2d 488, 630 P.2d 186 (1981). Similarly, retaliatory discharge is a tort actionable at law. *See Cain v. Kansas Corporation Commission,* 9 Kan.App.2d 100, 673 P.2d 451 (1983). In each of these cases, the court determined that public policy considerations required a departure from the employment-at-will doctrine.

The court of appeals has also addressed the effect of the parties' course of conduct, including employment manuals, on the employment-at-will doctrine. In *Allegri v. Providence–St. Margaret Health Center,* 9 Kan.App.2d 659, 684 P.2d 1031 (1984), the court held that an issue of fact was presented where an employee asserted an implied employment contract based on the course of dealings between the employee and the employer. *Id.* 684 P.2d at 1034. The course of dealings included an employment manual suggesting that the plaintiff could be terminated only for just cause,

favorable performance evaluations, the plaintiff's sacrifice of other income from his private physical therapy practice in order to work at the defendant/hospital, and an administrator's statement that the plaintiff could work until age 65 if he abided by hospital rules. *Id.* 684 P.2d at 1034–36. The court concluded: "Although we express no opinion as to the merits of plaintiff's claim that there existed an implied contract of employment for a specific duration, we do find sufficient contentions of some evidentiary value on this issue to merit its submission to a jury." *Id.* 684 P.2d at 1036.

Another case reported prior to Staneart's termination was *Rouse v. People's Natural Gas Co.,* 605 F.Supp. 230 (D.Kan.1985). In *Rouse,* Judge Kelly interpreted Kansas law as holding that an employment manual which is merely a unilateral expression of company policy and is not bargained for cannot by itself create an employment contract. *Id.* at 232. However, a "manual may be one of the relevant circumstances from which an implied contract can be inferred." *Id.*

In sum, the legal background against which Staneart's termination was made included a Kansas Supreme Court case which held that an employment manual distributed during an employee's tenure could not create an employment contract. It also included a Kansas Court of Appeals case which held that an employment manual, as well as positive performance evaluations, could be considered in determining whether an implied employment contract existed. A federal court had also interpreted Kansas law to recognize the relevance of an employment manual in determining whether an implied contract existed.

■ Given this background, we find that the law in Kansas was not clearly established at the time of Staneart's termination as to the circumstances giving rise to an implied employment contract. In *Johnson,* the Kansas Supreme Court expressly refused to consider an employment manual as having any influence on the employment

relationship.[1] Later retreats from this position by the court of appeals and a federal court interpreting Kansas law do not constitute clearly established law.

The Kansas Supreme Court's decision in *Morriss*, 241 Kan. 501, 738 P.2d 841, supports the court's holding that Kansas law was not clearly established at the time of Staneart's dismissal. In *Morriss*, the court held that the record, which included (1) evidence of favorable job performance evaluations and (2) an employment manual and stated company policy of termination only for good cause, indicated a legitimate issue of fact as to whether there was an implied employment contract which allowed termination only for just cause. *Id.* 241 Kan. at 513–14, 738 P.2d 841. The case is significant because it specifically details the state of transition in Kansas law at the time of Staneart's termination, as described above. *See id.* 241 Kan. at 510–13, 738 P.2d 841.

Further, even if clearly established, the law merely provided that an implied contract may arise because of the parties' conduct, including issuing favorable performance reviews and distributing an employment manual. The cases do not indicate that as a matter of law, an employment contract exists. Rather, whether there is a contract is a determination to be made by the fact-finder. *See Allegri*, 648 P.2d at 1036; *see Rouse*, 605 F.Supp. at 232; *Morriss*, 241 Kan. at 513–14, 738 P.2d 841.

Other federal courts have held that where state law indicates that a factual issue is presented regarding whether there is a property right in employment, no property right is clearly established and the defendant is qualifiedly immune. *See Tubbesing v. Arnold*, 742 F.2d 401 (8th Cir.1984); *Anaya Serbia v. Lausell*, 646 F.Supp. 1236 (D.P.R.1986). In *Tubbesing*, the plaintiff claimed that a policy manual which permitted termination only for just cause was applicable to her position as director of an election board. *Tubbesing*, 742 F.2d at 403. The defendant/board con-

tended that the director's position was not covered by the manual, and that the director served at the pleasure of the board. *Id.* at 406. The Eighth Circuit stated:

> There is no dispute that the Manual was in effect and no dispute about the contents of the Manual. The only dispute involves its interpretation, and this is a question for the court. Rather than precluding summary judgment, the fact that the application of the Policy Manual is disputed merely emphasizes that the law at the time of the conduct complained of was not clearly established.

*Id.* Thus, the court held that summary judgment should have been entered in favor of the board members because they were qualifiedly immune. In *Anaya Serbia*, the plaintiffs claimed that they had a property interest in their jobs and were terminated without due process, whereas the defendants contended that they were entitled to qualified immunity. *Anaya Serbia*, 646 F.Supp. at 1237. The court held that a genuine issue of material fact existed as to whether the plaintiffs were illegally hired, and thus, a factual issue existed as to whether they had a property interest in their continued employment. *Id.* at 1244. The court stated: "Since it is not clearly established that plaintiffs had a property interest in the employment with the PRTC, the defendants cannot be held to have violated a clearly established property right of which a reasonable person would have known." *Id.*

We concur with the holdings in *Tubbesing* and *Anaya Serbia*. Where a factual issue must be resolved to determine whether Staneart had a right to continued employment, she does not have a clearly established right to employment of which the defendants should reasonably have known. Thus, the defendants are qualifiedly immune.

IT IS THEREFORE ORDERED that the motion to dismiss of the defendants is con-

---

**1.** The court notes that the manual in *Johnson* was distributed during the employee's tenure, whereas Staneart read and signed the manual prior to her employment. Before Staneart's termination, the Kansas Supreme Court had not considered the effect of an employment manual which was signed prior to an employee's tenure. However, this fact in no way indicates that the law was clearly established that such a manual gives rise to an implied employment contract.

sidered by the court as a motion for summary judgment. The motion is granted because defendants J. Dewey Smith, Betty Kimball, Alfred Mettenburg, Donald Sellers, and David Drumright are entitled to qualified immunity.