Bobbie L. MITCHELL, Plaintiff,

v.

COFFEY COUNTY HOSPITAL, et al., Defendants.

No. 93–4081–RDR.

United States District Court, D. Kansas.

Sept. 25, 1995.

James L. Wisler, Schroer, Rice, P.A., Topeka, KS, for Bobbie L. Mitchell.

Edward M. Boyle, James E. Switzer, Payne & Jones, Chtd., Overland Park, KS, Bryan K. Joy, Joy & Jones, P.A., Burlington, KS, Thomas H. Bornholdt, Neill & Terrill, Overland Park, KS, Mark D. Lewis, Gardner, KS, for Coffey County Hospital, Coffey County Hospital Board of Directors, Linda McMurray, Marion Logan, Doreen Brady, Arnold Kraft, John Hetzel, Merlin Williams, Forrest Rhodes, Kenneth Vaughn, Nelson PH White and Dennis L. George.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. He contends that his First Amendment right to free speech and his Fourteenth Amendment right to due process were violated by the defendants when he was terminated from his position as maintenance supervisor at the Coffey County Hospital in Burlington, Kansas. Plaintiff has also asserted state law claims of breach of implied contract and retaliatory discharge. The defendants are Coffey County Hospital (Hospital); the Board of Trustees of the Hospital; Dennis L. George, the Chief Executive Officer (CEO) of the Hospital; and the following members of the Board of Trustees: Arnold Kraft, John Hetzel, Merlin Williams and Nelson White. This matter is presently before the court upon the defendants' motion for summary judgment. The defendants contend they are entitled to summary judgment on each of the claims asserted by the plaintiff.

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993):

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 91 L.Ed.2d 202, 106 S.Ct. 2505 [2509] (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 91 L.Ed.2d 265, 106 S.Ct. 2548 [2552] (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 89 L.Ed.2d 538, 106 S.Ct. 1348 [1355–56] (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324 [106 S.Ct. at 2553]; *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

The following facts are accepted as uncontroverted for purposes of the motion for summary judgment. Plaintiff was employed at the Coffey County Hospital as a maintenance supervisor from 1983 until his termination on January 8, 1992. He was hired by Dennis Owens, the Hospital's administrator.

Dennis George became the CEO of Hospital on August 5, 1991. During a construction project in the fall of 1991, plaintiff advised George that it would be difficult to perform maintenance and repair work on a fan installed in the ceiling of the construction project. Plaintiff then contacted the State Fire Marshal's office between October 4, 1991 and October 11, 1991 and asked whether the Hospital should have smoke or fire dampers. Upon learning of plaintiff's contact with the State Fire Marshal, George sent a memorandum to plaintiff and informed him that he should address his concerns about the project to George. On January 8, 1992, plaintiff was terminated by George.

The decision to terminate plaintiff's employment was made by George without the knowledge or advice of any member of the Board of Trustees of Hospital. George contacted Brian Joy, who serves as general counsel for Hospital, on January 8, 1992 concerning the termination of plaintiff. George indicated to Joy that certain problems had arisen with the employment of plaintiff. He related a recent incident concerning an ice machine and a prior incident concerning some wall covering. Joy told George that plaintiff was an employee at will and that it was not necessary that the Hospital provide plaintiff with a specific reason for his termination. Joy did not advise George that a due process hearing was necessary. After terminating plaintiff, George again contacted Joy and informed him that plaintiff had requested a hearing before the Hospital Board about his termination. George asked Joy at that time if the Hospital was required to provide plaintiff with a hearing. Joy told George that a post-termination hearing before the Hospital Board was not required.

On January 22, 1992, the Board of Trustees was advised that plaintiff had requested a hearing to contest or discuss his termination. After consulting with George, the Board of Trustees voted to deny plaintiff's hearing request. At the time the Board voted to deny plaintiff a hearing, they had no knowledge that plaintiff had made reports or inquiries to the State Fire Marshal.

## DUE PROCESS CLAIM

Plaintiff claims that he had a property interest in his position as maintenance supervisor and was denied due process when his employment was terminated. Plaintiff argues that his property interest arose from his implied contract of employment with the Hospital.

Recently, in *Snyder v. City of Topeka,* 884 F.Supp. 1504, 1512 (D.Kan.1995), Judge Crow summarized the law on procedural due process in the public employment arena as follows:

The Fourteenth Amendment prohibits a state from depriving a person of a property interest without due process of law. All procedural due process claims submit to a two-part inquiry: "(1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Farthing v. City of Shawnee, Kan.,* 39 F.3d 1131, 1135 (10th Cir.1994). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 33 L.Ed.2d 548, 92 S.Ct. 2701 [2709] (1972). In a public employment setting, "the touchstone is whether, under state law, the employee has 'a legitimate claim of entitlement' in continued employment, as opposed to a 'unilateral expecta-

tion' or 'an abstract need or desire' for it." *Farthing,* 39 F.3d at 1135 (quoting *Roth,* 408 U.S. at 577 [92 S.Ct. at 2709]).

The defendants contend that the facts and circumstances here show that plaintiff did not have a contract of employment, either express or implied, with the Hospital. Plaintiff contends that he did have an implied contract based upon representations contained in the Hospital's Guide to Employment and oral assurances made to him by various supervisors that his employment was secure as long as he observed the policies and procedures of the Hospital.

In his response to the motion for summary judgment, plaintiff adds several other factors to support his contention that an implied contract existed. He points to his length of employment, his excellent employment record, and the prior history of the defendants in giving terminated employees due process hearings. In reply, the defendants argue that these matters cannot be considered because they were not included in the pretrial order.

■ The pretrial order supersedes the pleadings and controls the subsequent course of litigation. Fed.R.Civ.P. 16(e); *Hullman v. Board of Trustees of Pratt Community College,* 950 F.2d 665, 667 (10th Cir.1991). The court has discretion to exclude evidence on issues not raised in the pretrial order. *Id.*

■ After a careful review of the pretrial order, the court finds that consideration of the plaintiff's length of employment and excellent employment record are appropriate in considering the plaintiff's implied contract claim. Although not referred to specifically in the portion of the pretrial order related to this claim, they are mentioned elsewhere in the plaintiff's allegations. The court believes that to eliminate consideration of these matters would be unjust and improper. The other factor—the prior history of the defendants in giving other employees due process hearings—presents a much different problem. The court must agree with the defendant that no mention of this allegation is contained in the pretrial order. Moreover, the court has been able to find only limited support in the record to support this allega-

tion. The record contains a reference to one employee who received a due process hearing in 1984. This one occasion hardly constitutes a "history" of such action by the defendants. In light of these circumstances, this allegation shall not be considered in determining the defendant's motion for summary judgment.

■ Approximately one year after plaintiff had been employed with the Hospital, he received a personal copy of the "Coffey County Hospital Personnel Policies." At the request of the Hospital, he agreed in writing to the conditions stated in the policy handbook. He has indicated that, although he did not receive a copy of the handbook until he had worked at the Hospital for about a year, he was aware of the provisions of the handbook as he had access to a copy. The introduction to the handbook provides in pertinent part as follows:

> Yours is an important job. No matter how remote your contact with the patient may seem, it is necessary, for it is through its personnel that a hospital achieves its objective of quality patient care. By efficient performance of your duties, you will aid in giving this high quality of care to all who come to Coffey County Hospital. In return, Coffey County Hospital offers our personnel ... training, security, promotion and prestige in being recognized as a member of a hospital which is held in high esteem.

The handbook provides a grievance procedure to handle problems at work. The handbook further provides an elaborate system of discipline with various categories of offenses providing for different actions, depending on the quantity and quality of the offense. The handbook notes that an employee who has completed his probationary period will receive at least one written warning prior to dismissal unless there is cause for immediate dismissal.

Plaintiff has stated that he was told by either Dennis Owens or Ralph Hays, both prior administrators at the Hospital, that "as long as he abided by the policies and procedures, that is the Policy and Procedure Manual, his job was secure, that he had a job as long as the hospital was here." Owens did

not recall making this statement to plaintiff, but he did acknowledge that he told his employees that "this is a permanent job; that the policies and procedures are the guidelines used for personnel; that we wanted them to stay around and be a part of the hospital and be a part of the health care in the community; that it is a team effort and it always has been." Owens further admitted that he did "assure the employee that what I was hiring them for was a permanent job, one I wanted them to maintain."

■■■■ Kansas law provides that an implied contract is an exception to the general rule that public employees have no property or vested interest in public employment. An implied obligation exists "on the part of the employer not to terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will." *Berry v. General Motors Corp.*, 838 F.Supp. 1479, 1491 (D.Kan.1993) (quoting *Morriss v. Coleman Co.*, 241 Kan. 501, 509, 738 P.2d 841 (1987)). "The controlling question as to whether a binding contract has been entered into depends on the intention of the parties." *Id.* This requires a "factual inquiry." *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 815 P.2d 72, 80 (1991); *Morriss*, 738 P.2d at 848. The understanding and intent of the parties is to be ascertained from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced. *Morriss*, 738 P.2d at 848–49 (quoting *Allegri v. Providence–St. Margaret Health Center*, 9 Kan. App.2d 659, 684 P.2d 1031 (1984)). "A reasonable person must be able to find from all relevant circumstances of the plaintiff's employment that there was an intent on behalf of both sides to be bound." *Berry*, 838 F.Supp. at 1492.

An analysis of the Kansas law on implied contract would be incomplete without some review of *Brown v. United Methodist Homes for the Aged*. In *Brown*, the Kansas Supreme Court considered whether the trial court had properly denied defendant's motions for a directed verdict and for judgment notwithstanding the verdict after a jury determined that the defendant had breached an implied contract of employment by terminating the plaintiff. 815 P.2d at 83. The Court concluded that the evidence presented by the plaintiff at trial which consisted of the defendant's personnel manual and the testimony of the plaintiff's supervisor was sufficient to uphold the trial court's denial of the defendant's motions. *Id.* The personnel manual contained specific provisions for terminating an employee, but also contained two statements which stressed that employment with the defendant was "at will." *Id.* The testimony of the supervisor indicated that it was the defendant's philosophy "to be fair to the employees," and that two clerical mistakes had been made regarding the plaintiff's leaves of absence. *Id.* Although characterizing the evidence presented by the plaintiff as "not strong," the Kansas Supreme Court upheld the jury's verdict on the plaintiff's implied contract claim. *Id.*

The Tenth Circuit, in analyzing implied contract claims from Kansas, has suggested that under *Brown* "not much" evidence in addition to the policy manual is required to create an issue of fact. *Koopman v. Water Dist. No. 1 of Johnson*, 972 F.2d 1160, 1165 (10th Cir.1992). In a subsequent case, the Tenth Circuit concluded that *Brown* required a plaintiff claiming an implied contract for a definite duration to introduce a personnel manual or handbook plus some independent probative evidence bearing on the issue of the defendant's intent in order to survive summary judgment. *Farthing v. City of Shawnee*, 39 F.3d 1131, 1139 (10th Cir.1994).

■■■■ The rule to be drawn from the Kansas cases is that "an employee cannot create a jury question by reliance on only one factor, whether that be a statement in the policy manual or a statement from the employer." Worth and Landis, Fire at Will? The Status of Judicially Created Exceptions to Employ-

ment–at–Will in Kansas, 64 J.K.B.A. 22, 25 (1995). Beyond that, the court must examine the factors set forth in *Morriss* to determine if sufficient evidence of an implied contract is present.

The court is convinced that plaintiff has presented sufficient evidence of an implied contract to avoid summary judgment. The evidence when viewed in the light most favorable to the plaintiff shows a personnel handbook that suggests that an employee will not be terminated absent cause. The handbook contains no reference such as those in *Brown* or *Masterson v. Boliden–Allis, Inc.,* 19 Kan.App.2d 23, 865 P.2d 1031 (1993) that the employee is employed "at will." The statements contained in the handbook alone, of course, would not survive summary judgment in Kansas. There is evidence beyond that in this case in the form of testimony from the plaintiff that he was assured by at least two of the administrators of the Hospital that he would remain employed if he followed Hospital policies. Such an oral assurance is the type of independent probative evidence necessary to survive summary judgment on an implied contract claim in Kansas. Accordingly, the court shall deny defendants' motion for summary judgment on plaintiff's due process claim and implied contract claim.

### FIRST AMENDMENT

 A public employer may not condition employment or its incidents upon an employee's relinquishment of his First Amendment rights. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The Supreme Court has developed a four-step process in analyzing whether a public employer's action impermissibly infringes on free speech rights. First, the court must decide whether the speech at issue touches on a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). If it does, the court must balance the interest of the employee in making the statement against the employer's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1735. Next, if the preceding requisites are met, the

speech is protected, and plaintiff must show his expression was the motivating force in the detrimental employment decision. *Mt. Healthy City School Dist. Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Finally, if plaintiff sustains this burden, the employer can still prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech. *Id.*

The defendants argue that the plaintiff's speech does not touch upon a matter of public concern and, even if it did, plaintiff's interest in making the speech did not outweigh the Hospital's interest in maintaining the efficient operation of its enterprise and, therefore, the speech cannot survive the *Pickering* balancing test. The defendants also contend that the plaintiff cannot demonstrate that his speech was the motivating force in the decision to terminate him.

On October 4, 1991, during the construction project at the Hospital, plaintiff advised George in a memorandum that it would be difficult to perform maintenance and repair work on a fan installed in the ceiling of the construction project. Subsequently, plaintiff called the State Fire Marshal's Office to inquire whether the Hospital should have smoke or fire dampers. Plaintiff has stated that he called for "his own information." He explained in his deposition as follows: "I just called for my own information to find out. I didn't do anything except make a phone call and ask if a hospital facility had to have smoke dampers in a multi-zone air conditioning system." He frankly admitted that he was not calling because he suspected a code violation and that he was not calling as a "citizen concerned about safety." He did believe that as maintenance supervisor he had a responsibility to report any safety or maintenance problems, including fire code violations, to the Hospital. In response to the plaintiff's telephone call, the State Fire Marshal did visit the Hospital and inspect the construction project. George responded to the plaintiff's memorandum with a memorandum dated October 11, 1991, which stated in pertinent part:

On the memo from you about calling the fire marshall to inquire about possible violations. Don't raise issue with him or her until I check them out with our engineer. Don't make them interested in examining all of the old remodeling. This is raising a red flag and we do not need to be hassled. I have a list to check with the engineer to see if the fan is in place with the proper code!!!!!

■ We turn initially to the question of whether the plaintiff's speech was protected. Speech is protected only if it is on a matter of public concern, that is, if it relates to a topic of "political, social, or other concern to the community." *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. at 1690.

■ In analyzing whether speech constitutes a matter of public concern, the focus is on the motive of the speaker, "i.e., whether the speech was calculated to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir.1988). The subjective motive of the speaker is an important factor in determining whether the speech was calculated to redress personal grievances or to address a broader public purpose. *Workman v. Jordan*, 32 F.3d 475, 483 (10th Cir.1994). What is actually said on a topic must itself be of public concern. It must sufficiently inform the issue as to be helpful to the public. *Wilson v. City of Littleton*, 732 F.2d 765, 768–69 (10th Cir.1984). In addition, speech is more likely to be found on a matter of public concern when it discloses evidence of corruption, impropriety, or other malfeasance on the part of government officials in the conduct of their official duties. *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir. 1989). "[W]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices,

without intrusive oversight by the judiciary." *Connick*, 461 U.S. at 146, 103 S.Ct. at 1690.

■ A careful review of the speech in question in this case reveals that it did not touch on a matter of public concern. The context, form and content of the speech command such a conclusion. Plaintiff contacted the State Fire Marshal's office after he became aware of the installation of an exhaust fan in the new construction project. Plaintiff first raised his concerns about the fan in the memorandum sent to George on October 4, 1991. This memo shows that plaintiff had no concerns about the fire or safety code violation posed by the fan. Rather, plaintiff's memo expresses only his anxieties regarding the difficulties he would have in performing future maintenance and repairs to the fan. His concerns about the maintenance of the fan led him to telephone the State Fire Marshal. Plaintiff contacted the State Fire Marshal to satisfy his own personal curiosity and to guide him in performing his employment duties. He has acknowledged that the purpose of his call was not to report a fire code violation. Plaintiff's call was not intended to expose any malfeasance, corruption or impropriety. This was not an effort to inform the public of anything, only an effort by the plaintiff to get a question answered. Plaintiff was not concerned that the new construction at the Hospital posed a threat to the public.

■ Plaintiff has suggested that the telephone call did touch upon a matter of public concern—safety at a public hospital. Although the safety of a hospital is obviously a matter of public concern, the content and context of plaintiff's comments do not reflect speech on a matter of public concern. The fact that an employee's speech involves a topic that may be deemed a matter of public import does not automatically render his remarks on that subject protected. The content and form of the employee's remarks, along with the underlying circumstances, including the employee's reasons for speaking, remain essential to the determination. *See, e.g., Rahn v. Drake Center, Inc.*, 31 F.3d 407, 412–15 (6th Cir.1994) (hospital nurse's press release challenging hospital president's proposed spending of money raised by tax levy

and new work rules did not touch upon matter of public concern); *Morgan v. Ford,* 6 F.3d 750 (11th Cir.1993) (employee's claims that her supervisor had engaged in sexual harassment did not constitute speech regarding public concern), *cert. denied,* —— U.S. ——, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994); *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 143 (2d Cir.1993) (public hospital employee's complaints with regard to sexual harassment by a supervisor did not touch upon matter of public concern), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Pearson v. Macon–Bibb County Hospital Authority,* 952 F.2d 1274, 1278–79 (11th Cir.1992) (senior staff nurse's comments critical of overall operating room cleanliness in public hospital in which she was employed did not touch upon matter of public concern); *Dennison v. County of Frederick, Va.,* 921 F.2d 50, 54 (4th Cir.1990) (county building inspector's strict enforcement of building code did not constitute speech touching upon matter of public concern), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 998 (1991); *Crain v. Board of Police Commissioners of Metropolitan Police Dept. of City of St. Louis,* 920 F.2d 1402 (8th Cir.1990) (police officer's written grievance and oral statements complaining of police board's sick leave regulations did not touch upon matter of public concern); *Koch v. City of Hutchinson,* 847 F.2d 1436, 1447–49 (10th Cir.) (*en banc* ) (fire marshal's official report in which he stated his opinion as to cause of fire did not involve matter of public concern), *cert. denied,* 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). In addition, the fact that the call arose during the course of what plaintiff perceived as his official duties weighs against a finding that the speech addressed a matter of public concern. *See, e.g., Thomson v. Scheid,* 977 F.2d 1017, 1021 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2341, 124 L.Ed.2d 251 (1993) (conversations of employee with supervisors about filing complaint against County Commissioner involved only matters of internal department policy and did not touch upon public concern; likewise, statements to Agent of the Office of Inspector General were not protected speech because approved of the contacts and therefore employee was

only acting in the course of his employment); *Koch,* 847 F.2d at 1447 (speech of fire marshal in official report weighs against finding that speech involved matter of public concern); *Callaway v. Hafeman,* 832 F.2d 414, 417 (7th Cir.1987) (speech of school employee not protected even though communications touched upon issue of public concern because she was not attempting to speak out as a citizen concerned with problems facing the school district).

In sum, the evidence before the court demonstrates that plaintiff was speaking as an employee upon a matter of personal interest, not as a citizen upon a matter of public concern. Accordingly, the court finds that the defendants are entitled to summary judgment on plaintiff's First Amendment claim.

## QUALIFIED IMMUNITY

The individual defendants contend that they are entitled to qualified immunity on plaintiff's due process claim because the law was not clearly established at the time of plaintiff's termination. The defendants also contend that they are entitled to qualified immunity on the due process claim based upon "extraordinary circumstances." The defendants point to the fact that they relied upon the advice of counsel in denying plaintiff a hearing both prior to and after his termination.

■■■ Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■■■ When a defendant asserts the affirmative defense of qualified immunity, "the plaintiff initially bears a heavy two-part burden." *Albright v. Rodriquez,* 51 F.3d 1531, 1534 (10th Cir.1995). The plaintiff must show (1) "that the defendant's actions violated a constitutional or statutory right" and (2) that the right "allegedly violated [was] clearly established at the time of the conduct at issue." *Id.* " 'Plaintiff' must articulate the clearly established constitutional right and

the defendant's conduct which violated the right with specificity.' " *Id.* (quoting *Romero v. Fay,* 45 F.3d 1472, 1475 (10th Cir.1995)). "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Id.* at 1535. If the plaintiff succeeds, the burden shifts to the defendant to make the usual summary judgment showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Cummins v. Campbell,* 44 F.3d 847, 850 (10th Cir.1994).

Even where the governing law is settled, there may be "extraordinary circumstances" which prevent a defendant from knowing that the rights which were violated were clearly established. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738. A defendant's reliance upon legal advice may fall under the "extraordinary circumstances" defense. *V–1 Oil Co. v. State of Wyoming Dept. of Environmental Quality,* 902 F.2d 1482, 1488 (10th Cir.), *cert. denied,* 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990). A determination of whether legal advice given to a defendant constitutes "extraordinary circumstances" depends upon the circumstances of each case. *Cannon v. City and County of Denver,* 998 F.2d 867, 874 (10th Cir.1993). This exception to the rule that the qualified immunity defense fails where the defendant violated a clearly established right applies only rarely. *Id.* "The circumstances must be such that the defendant was so 'prevented' from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right." *Id.* The burden of proving this defense rests with the defendant relying on it. *Id.* The factors relevant to determining when legal advice satisfies the extraordinary circumstances exception include: "how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was"; "whether complete information had been provided to the advising attorney[s]"; the "prominence and competence of the . attorney[s]"; and "how soon after the advice was received the disputed action was taken." *V–1 Oil,* 902 F.2d at 1489. The advice need not be couched in certain precise

legal terms before the official is entitled to rely upon it. *Id.* at 1489 n. 6.

The law is clearly established that a public employee who possesses a property interest in his employment is entitled to due process prior to termination. Moreover, the law is clearly established in Kansas that a public employee who has an implied contract with his employer has a property interest in his employment. The question here is whether the defendants understood or should have understood that plaintiff had a property interest in his employment.

Under the circumstances of this case, the court finds that the individual defendants are entitled to qualified immunity. The question of whether plaintiff had an implied contract at the time of termination is unclear. Plaintiff has failed to come forward with evidence that the defendants should have known that he had an implied contract of employment. The evidence offered in support of this claim by the plaintiff consists of the provisions of the personnel manual and oral assurances given him by administrators prior to George. The law in Kansas at the time of plaintiff's termination indicated that the provisions of a personnel manual, which included statements of specific disciplinary procedures to be followed prior to termination or lists of grounds for termination, did not standing alone create a jury question on the issue of implied contract. Evidence such as the oral assurances given to plaintiff in this case by Hospital administrators may create a fact issue. Plaintiff, however, has failed to introduce any evidence that the defendants were aware of these statements or that they should have been aware of these statements. In fact, the individuals who purportedly made them have denied making them. These circumstances suggest that plaintiff did not have a clearly established right to employment of which the defendants should reasonably have known. Thus, the individual defendants are qualifiedly immune.

The result reached by the court was previously reached by Judge O'Connor in *Staneart v. Board of Trustees of Ransom Memorial Hospital,* 684 F.Supp. 1573, 1578 (D.Kan.1988). In *Staneart,* Judge O'Connor held that where a factual issue must be re-

solved to determine whether plaintiff has a property interest in continued employment, then the plaintiff does not have a "clearly established right to employment of which the defendants should reasonably have known." *Id.* Accordingly, Judge O'Connor found the defendant in *Staneart* qualifiedly immune. *Id.* In reaching this conclusion, Judge O'Connor relied upon *Tubbesing v. Arnold,* 742 F.2d 401 (8th Cir.1984) and *Anaya Serbia v. Lausell,* 646 F.Supp. 1236 (D.P.R. 1986). We note that Judge Kelly disagreed with *Staneart* in *Derstein v. Benson,* 714 F.Supp. 481 (D.Kan.1989), *rev'd on other grounds,* 915 F.2d 1410 (10th Cir.1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991). Judge Kelly reasoned as follows:

> Under the reasoning of *Staneart,* a plaintiff who claims to have an implied contract of employment could never establish the existence of a property interest in his or her continued employment since that question is one which must necessarily be resolved by a fact finder.

> . . . . .

> The court has already determined that implied employment contracts were recognized in Kansas in 1981. Thus, a reasonable person would have been required to consider the circumstances of plaintiff's employment to determine whether an implied contract existed. While that determination would depend upon the factual circumstances of that case, the court cannot agree that the defendants can be absolved from liability for their decision simply because they were required to make some minimal evaluation of plaintiff's individual circumstance. Accordingly, the court concludes that the Kansas law recognizing implied employment contracts was clearly established in 1981, and defendants are not entitled to qualified immunity in this case.

*Id.* at 493.

The court cannot agree with the reasoning and conclusion reached by Judge Kelly. He is correct that the reasoning of *Staneart* does make it difficult for a plaintiff asserting the existence of an implied contract as the basis for his property interest in continued employment to overcome the qualified immunity hurdle. Nevertheless, the *Staneart* decision does not foreclose the plaintiff from prevailing on this issue. The question becomes whether the defendants should reasonably have known whether the plaintiff had a property interest in his continued employment. In some cases, particularly where the oral assurances relied upon by the plaintiff were allegedly made by a defendant, the court believes that qualified immunity would be inappropriate. However, in cases such as this one, where no evidence is presented of any knowledge by the defendants of any basis for an implied contract beyond the provisions of the employment handbook, the court believes that qualified immunity is appropriate.

Even if we found that the plaintiff's right to due process was clearly established, we would conclude that extraordinary circumstances prevented the defendants from knowing the relevant legal standard. The uncontroverted facts show that defendant George sought the advice of Hospital counsel prior to terminating plaintiff. He specifically asked counsel if a hearing was necessary. He was told that a hearing was not necessary because plaintiff was an "at-will" employee. Hospital counsel was given all the facts that defendant George was aware of when the advice was sought. Moreover, Hospital counsel had a thorough understanding of the law in this area since he had represented an employee of Hospital in 1984 during a due process termination proceeding. These circumstances represent the type of extraordinary circumstances which allow for the application of the exception to the rule that a qualified immunity defense fails where the defendant violated a clearly-established right. Accordingly, the individual defendants are also entitled to qualified immunity on this basis.

### RETALIATORY DISCHARGE

The defendants contend that they are entitled to summary judgment on plaintiff's retaliatory discharge claim because plaintiff failed to comply with the notice requirements of K.S.A. 12–105b. The defendants rely upon *Wiggins v. Housing Authority of Kansas City,* 19 Kan.App.2d 610, 873 P.2d 1377

(1994) for support. Plaintiff contends that the claim he submitted to the Hospital did substantially comply with the provisions of K.S.A. 12–105b and therefore his retaliatory discharge claim should be considered.

Kansas law provides a mandatory uniform procedure for presenting claims against municipalities. K.S.A. 12–105b. This statute provides in part as follows:

> (a) All claims against a municipality must be presented in writing with a full account of the items, and no claim shall be allowed except in accordance with the provisions of this section. A claim may be the usual statement of account of the vendor or party rendering a service or other written statement showing the required information.

> . . . . .

> (d) Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim.

The notice sent in this case by plaintiff to the Hospital contained the following information concerning the plaintiff's claim:

> The event complained of herein occurred on January 8, 1992, at the Coffey County Hospital. On such date, Mr. Mitchell's employment with the hospital was wrongfully terminated. Mr. Mitchell's termination was a breach of contract and a denial of due process.

The purpose of K.S.A. 12–105b is to provide the municipality an opportunity to investigate the claim, assess its potential liability and settle the dispute. *Kansas Municipal Gas Agency v. Vesta Energy Co., Inc.,* 840 F.Supp. 814, 824 (D.Kan.1993). The requirements of K.S.A. 12–105b are satisfied by "substantial compliance" with its provisions, which means that a claimant must attempt to state each element required of the notice. *Tucking v. Board of Jefferson County Commissioners,* 14 Kan.App.2d 442, 796 P.2d 1055, 1059 (1990).

In *Wiggins,* plaintiff was terminated by the defendant. Plaintiff sent a notice of claim pursuant to K.S.A. 12–105b to the defendant. Plaintiff then filed suit asserting claims of breach of implied contract and retaliatory discharge. The trial court dismissed plaintiff's retaliatory discharge claim because plaintiff had failed to "substantially comply" with K.S.A. 12–105b. On appeal, the Court of Appeals affirmed. The court applied *Tucking* and concluded that the plaintiff had not satisfied the substantial compliance provisions of K.S.A. 12–105b. 873 P.2d at 1380. The court stated:

> Applying the *Tucking* standard—substantial and minimal compliance—to the present case, plaintiffs' notices complied with every element of K.S.A. 12–105b(d) except the second element, requiring a concise statement of the factual basis of the claim, including date, time, place, and circumstances of the act of which complaint is made.

> Nothing in either of plaintiffs' notices referred to any whistle-blowing activity, nor did either notice state that plaintiffs were discharged in retaliation for whistle blowing. The purpose of the statute is to provide the municipality an opportunity to ascertain the incidents attending the events at a time while the occurrence is fresh in the minds of those possessing knowledge of the subject. *Howell v. City of Hutchinson,* 177 Kan. 722, 725–26, 282 P.2d 373 (1955).

Since the Housing Authority had no notice that plaintiffs claimed retaliatory discharge, it could not properly investigate those claims. The trial court did not err in granting defendant's motion for summary judgment on plaintiffs' tort claims for failure to substantially comply with K.S.A. 12–105b.

*Id.*

The court is somewhat handicapped in applying *Wiggins* because the Court of Appeals failed to provide the content of the notice involved there. Nevertheless, the circumstances as set forth in the opinion suggest that plaintiff must have indicated in his claim that he was seeking damages based upon his termination. The *Wiggins* court viewed that as insufficient for the purposes of plaintiff's retaliatory discharge claim. Here, the notice provided to the defendants must fail for the same reasons set forth in *Wiggins*. The notice sent by plaintiff in this case makes no mention of retaliatory discharge. The statute requires that the claimant set forth "a concise statement of the factual basis for the claim." The plaintiff's notice fails to contain any facts that would support a retaliatory discharge claim. There is no hint in the notice that plaintiff believed that he was terminated based upon retaliatory motives. Accordingly, in compliance with *Wiggins,* the court finds that the plaintiff's notice of claim to defendants did not substantially comply with K.S.A. 12–105b.

With this finding, the court shall grant summary judgment to the defendant Hospital/Board of Trustees on plaintiff's retaliatory discharge claim. The court will not, however, grant summary judgment to the other defendants on this claim. The only argument made by the defendants concerning the plaintiff's retaliatory discharge claim involved the application of K.S.A. 12–105b, which applies only to claims against municipalities and its agencies. The claim of retaliatory discharge against the individual defendants must remain, even though substantial questions remain as to the viability of this claim including, but not limited to, whether a retaliatory discharge claim can even be asserted against an individual defendant. The court has found no Kansas cases that have addressed this issue. Other courts have reached differing conclusions. Compare *Morton v. Hartigan,* 145 Ill.App.3d 417, 99 Ill.Dec. 424, 427, 495 N.E.2d 1159, 1162 (1986) (discharged employee could not bring retaliatory discharge claim against his supervisor because his employer was the proper defendant) and *Proctor v. Caudill,* 820 P.2d 1353, 1356 (Okla.Ct.App.1991) (same) with *Fellhauer v. City of Geneva,* 190 Ill.App.3d 592, 137 Ill.Dec. 846, 851–52, 546 N.E.2d 791, 796–97 (1989) (retaliatory discharge claim could be brought against supervisor, coemployee, or agent of employer), *rev'd on other grounds,* 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870 (1991). We leave this issue for another day.

### PUNITIVE DAMAGES

The defendants contend that plaintiff cannot recover punitive damages under either his federal law claims or his state law claims. Plaintiff agrees that he cannot recover punitive damages against the Hospital/Board of Trustees based upon his § 1983 claims and against all defendants based upon his retaliatory discharge claim. With the aforementioned rulings on plaintiff's First Amendment and due process claims, the court finds that plaintiff also cannot recover punitive damages against the individual defendants on his § 1983 claims. Accordingly, the combination of the court's rulings and the plaintiff's acknowledgements means that plaintiff cannot recover punitive damages in this action.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Doc. # 104) be hereby granted in part and denied in part. All defendants are entitled to summary judgment on plaintiff's First Amendment claim under 42 U.S.C. § 1983. The individual defendants are entitled to summary judgment on plaintiff's procedural due process claim under 42 U.S.C. § 1983. Defendant Coffey County Hospital/Board of Trustees is entitled to summary judgment on plaintiff's retaliatory discharge claim. All defendants are entitled to summary judgment on plaintiff's claims for punitive damages. Summary judgment is denied as to all other claims.

**IT IS SO ORDERED.**